## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ESTEBAN HERNAIZ,<br>　　　*Plaintiff*,<br><br>　　　v.<br><br>WAGNER, et al.,<br>　　　*Defendants*. | No. 3:24-cv-129 (VAB) |

## INITIAL REVIEW ORDER AND RULING ON MOTION TO DISMISS

Esteban Hernaiz ("Plaintiff"), an inmate in the custody of the Connecticut Department of Correction ("DOC"), filed this case, which was then removed to this Court. Plaintiff is proceeding *pro se* for damages, alleging violations of his rights under the United States and Connecticut Constitutions against six employees of the City of Meriden, Connecticut: Sergeant Wagner, Police Chief Rosado, Deputy Chief Scully, Internal Affairs Detective McKenna, Internal Affairs staff Boothroyd, and Internal Affairs staff McKay ("Meriden Defendants"). Compl., ECF No. 1-1 (Feb. 10, 2024).

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Defendants have also filed a motion to dismiss under Federal Rule 12(b)(6). Mot. to Dismiss (March 8, 2024).

Thus, the Court conducts an initial review of whether Plaintiff's Complaint states any plausible claims under 28 U.S.C. § 1915A(a) and considers whether Defendants' motion to dismiss should be granted on any grounds.

For the following reasons, the Complaint is **DISMISSED**, and Defendants' motion to dismiss (ECF No. 20) is **GRANTED** as to Mr. Hernaiz's federal claims.

The Court declines to exercise supplemental jurisdiction over Mr. Hernaiz's state law claims. *See* 28 U.S.C. § 1367(c)(3).

To the extent deficiencies identified in this Ruling and Order can be remedied, Mr. Hernaiz may file an Amended Complaint by **November 15, 2024**.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Factual Allegations[1]

In November 2021, Sergeant Wagner and Detective McKenna allegedly conspired with Hartford Police Officers Rivera and Mantilla (who are not Defendants in this action) and "told Hartford Police Officers to illegally arrest and detain" Mr. Hernaiz. Compl. at ¶ 1, ECF No. 1-1.

Mr. Hernaiz alleges that Hartford Police Officers Rivera and Mantilla "called Defendants Wagner and McKenna at the Meriden Police Department because there was an 'inquiry'" about Mr. Hernaiz's vehicle. *Id.* at ¶ 2. Defendants Wagner and McKenna allegedly "told [the] Hartford Police" to illegally detain "[Mr. Hernaiz], [his] car and [his] clothes without a warrant." *Id.* at ¶ 12.

Mr. Hernaiz alleges that Hartford Police Officers Rivera and Mantilla illegally handcuffed and shackled him and arrested him without just cause and without his consent on November 9, 2021 at Hartford Hospital. *Id.* at ¶¶ 6, 8.

Mr. Hernaiz was allegedly later "picked up at the Hartford Police Station by Defendants Wagner and McKenna and brought to the Meriden Police Department" but the officers did not tell him anything. *Id.* at ¶ 4.

---

[1] For purposes of this motion to dismiss, the Court considers the factual allegations from the Complaint to be true.

Mr. Hernaiz was then allegedly held on an "excessive bond" and sent to New Haven Correctional Center ("NHCC"). *Id.* at ¶ 5. At that time, Mr. Hernaiz had not had any "court appearances" for a year. *Id.* at ¶ 5.

After Mr. Hernaiz's "illegal" detainment on November 9, 2021, Sergeant Wagner allegedly secured "a bogus warrant" on November 10, 2021, submitted the warrant to the NCIC database, and "illegally towed" Mr. Hernaiz's "car [and] clothes."[2] *Id.* at ¶¶ 13, 14.[3] The arrest warrant authored by McKenna and Wagner was not allegedly submitted until November 10, 2021, at 5 AM. *Id.* at ¶ 6. Mr. Hernaiz claims that the "bogus warrant was illegally executed because [he] was detained on November 9, 2021[.]" *Id* at ¶ 14.[4] Mr. Hernaiz complains that Sergeant Wagner failed to specify why Plaintiff and his property were seized. *Id.* at ¶ 13.

On April 6, 2023, Internal Affairs staff member Boothroyd came to see Mr. Hernaiz at NHCC; with Mr. Hernaiz's consent, Boothryd taped Plaintiff's complaint against Defendants Wagner and McKenna and Hartford Police Officers Mantilla and Rivera. *Id.* at ¶ 10.

In August of 2023, Lieutenant McKay allegedly reviewed the tape recording of April 6, 2023, and stated "he saw no wrongdoing and that the Chief of Police Rosado did not find any wrongdoing as well." *Id.* at ¶ 11.[5]

---

[2] At paragraph nine, Plaintiff alleges that Defendants McKenna and Wagner illegally towed and searched his car. *Id.* at ¶ 9. The Court construes this allegation as asserting that his car was towed and searched illegally pursuant to the "bogus" warrant as alleged paragraphs 13 and 14. To the extent that Plaintiff intended another meaning, his Complaint does not allege the underlying facts clearly enough for the Court to determine one.

[3] Plaintiff claims that failure of Defendants McKenna and Wagner to enter the application for an arrest warrant in the N.C.I.C. database prior to his arrest on November 9, 2021, by the Hartford Officers violated his United States and Connecticut Constitutional rights. *Id.* at ¶ 7.

[4] Mr. Hernaiz claims that this conduct violates Section Nine of the Connecticut Constitution. *Id.*

[5] The Court takes judicial notice of the publicly available information on the DOC and the Connecticut Judicial websites. *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) ("[Court may] take judicial notice of relevant matters of public record."). The Connecticut Judicial website shows that Mr. Hernaiz was arrested on November 10, 2021, for violation of Connecticut Criminal statutes Sections 53-59 (Assault in the First Degree), 53-223 (Violation of Protective Order), 53-63(Reckless Endangerment in the First Degree) and 53a-181 (Breach of Peace 2d Degree); Mr. Hernaiz has pleaded not guilty to these charges and the case remains pending. The DOC website shows that Mr. Hernaiz was last admitted to the custody of DOC on November 10, 2021, and is currently serving a three-year sentence for Unlawful Restraint in the First Degree imposed on May 29, 2024.

### B.    Procedural History[6]

On February 1, 2024, Defendants filed their notice of removal for Mr. Hernaiz's action against Defendants that was commenced in Connecticut Superior Court for the Judicial District of Meriden at Meriden. Removal, ECF No. 1.[7]

On March 8, 2024, Defendants filed their motion to dismiss Mr. Hernaiz's Complaint. Mot. to Dis., ECF No. 20.

On March 14, 2024, the Court entered a scheduling order in this case. Order, ECF No. 22.

On March 20, 2024, Mr. Hernaiz filed a notice that appeared to serve as an objection to Defendants' motion to dismiss. Notice, ECF No. 23. On April 5, 2024, Defendants moved to seal Mr. Hernaiz's notice because it contained information about an individual who had an order of protection against Mr. Hernaiz. Mot. to Seal, ECF No. 27. The Court granted the motion to seal. Order, ECF No. 30 (April 24, 2024).

On April 5, 2024, Defendants filed a response to Mr. Hernaiz's assertions made in his notice. Defs.' Reply, ECF No. 26.

On April 11, 2024, Mr. Hernaiz filed documents that included responsive arguments to Defendants' Motion to Dismiss and a Hartford Police Department Incident Report dated November 9, 2021. Exhibit, ECF No. 28.

On April 18, 2024, Plaintiff filed another document that appears to respond to Defendants' arguments in the Motion to Dismiss. Exhibit, ECF No. 29.

On April 23, 2024, Plaintiff filed another response to the Motion to Dismiss. Pl.'s Obj., ECF No. 31.

---

[6] The following facts present the procedural history relevant to the pending motion to dismiss.
[7] Mr. Hernaiz's filed his case in the Judicial District of Meriden under case docket NNI-CV24-5016805-S. *See* https://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=NNICV245016805S.

On April 25, Defendants filed an emergency motion for permanent injunction seeking a filing injunction against Mr. Hernaiz. Emerg. Mot. for Perm. Injunc., ECF No. 32. The Court denied this motion without prejudice. Order, ECF No. 37 (Sept. 6, 2024).

On April 25, 2023, Defendants moved to strike Plaintiff's responses [ECF Nos. 28, 29, and 31] as unauthorized sur-replies. Mot. to Strike, ECF No. 33.

On June 17, 2024, the Court denied Defendants' motion to strike. Order, ECF No. 35.

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, a court is required to conduct a preliminary review to determine whether the complaint alleges cognizable claims or whether the complaint "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." Upon review, the court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]

to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification ... to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of N.Y.C.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).


III.    DISCUSSION

Mr. Hernaiz's Complaint seeks damages under 42 U.S.C. § 1983 for violation of his rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. He also asserts state law claims under this Court's supplemental jurisdiction for violation of Sections Seven, Eight, and Nine of the Connecticut Constitution.

The Court will address each of these claims in turn.

A.      42 U.S.C. § 1983

Section 1983 "provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999). Mr. Hernaiz seeks damages from each Defendant for violation of his constitutional rights under 42 U.S.C. § 1983.

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (citation omitted)). This is true with respect to supervisory officials, as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) ("[A] plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability.").

1.  **The Eighth Amendment Claim**

The Eighth Amendment requires that when bail is granted, it may not "impose restraints that are more than necessary to achieve the government's interest[,] ... [in] preventing risk of flight and danger to society or children." *United States v. Polouizzi*, 697 F. Supp. 2d 381, 390

(E.D.N.Y. 2010) (citing *United States v. Salerno,* 481 U.S. 739, 754 (1987)). The Supreme Court

has held that the term "excessive" means "grossly disproportional to the gravity of a defendant's

offense." *United States v. Bajakajian,* 524 U.S. 321, 334 (1998); *Salerno,* 481 U.S. at 754-55

("[B]ail must be set by a court at a sum designated to ensure th[e] goal [of preventing flight], and

no more.").

Mr. Hernaiz alleges that he was held on an excessive bond in violation of his Eighth

Amendment rights. Compl. at ¶ 5, ECF No. 1-1.

Defendants argue that Plaintiff has not stated an Eighth Amendment excessive bail claim.

Defs.' Mem. at 23-25, ECF No. 20-1.

The Court agrees.

No facts support an inference that any of the Defendants in this case had any involvement

with Mr. Hernaiz's bail set by the Connecticut superior court. To the extent that any of the

Defendants had a role in setting Mr. Hernaiz bail under Connecticut General Statutes § 54-63c,[8]

---

[8] Section 54-63c(a) provides:

Except in cases of arrest pursuant to a bench warrant of arrest in which the court or a judge thereof has indicated that bail should be denied or ordered that the officer or indifferent person making such arrest shall, without undue delay, bring such person before the clerk or assistant clerk of the superior court for the geographical area under section 54-2a, when any person is arrested for a bailable offense, the chief of police, or the chief's authorized designee, of the police department having custody of the arrested person or any probation officer serving a violation of probation warrant shall promptly advise such person of the person's rights under section 54-1b, and of the person's right to be interviewed concerning the terms and conditions of release. Unless the arrested person waives or refuses such interview, the police officer or probation officer shall promptly interview the arrested person to obtain information relevant to the terms and conditions of the person's release from custody, and shall seek independent verification of such information where necessary. At the request of the arrested person, the person's counsel may be present during the interview. No statement made by the arrested person in response to any question during the interview related to the terms and conditions of release shall be admissible as evidence against the arrested person in any proceeding arising from the incident for which the conditions of release were set. After such a waiver, refusal or interview, the police officer or probation officer shall promptly order release of the arrested person upon the execution of a written promise to appear or the posting of such bond as may be set by the police officer or probation officer, except that no condition of release set by the court or a judge thereof may be modified by such officers and no person shall be released upon the execution of a written promise to appear or the posting of a bond without surety if the person is charged with the commission of a family violence crime, as defined in section 46b-38a, and in the commission of such crime the person used or threatened the use of a firearm.

they are entitled to absolute immunity. *Sanchez v. Doyle*, 254 F. Supp. 2d 266, 271 (D. Conn. 2003) (holding police officials act in a judicial capacity in performing bail setting functions and are entitled to absolute immunity from liability in section 1983 actions) (citing *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999)). Accordingly, the motion to dismiss must be granted as to Plaintiff's Eighth Amendment excessive bail claim.

Mr. Hernaiz has not otherwise alleged a plausible claim of Eighth Amendment violation by any of the named Meriden Defendants. Generally, the Eighth Amendment applies to constitutional claims arising post-conviction. *See Bonilla v. Jaronczyk*, 354 F. App'x 579, 581 (2d Cir. 2009). Moreover, the mere mention of a constitutional provision is not sufficient to state a claim for relief under that provision. *See, e.g.*, *Monger v. Conn. Dep't of Transp.*, 2017 WL 3996393, at *5 (D. Conn. Sept. 11, 2017) ("Merely mentioning the state constitution, however, is not sufficient to state a claim upon which relief can be based.").

Accordingly, any claim against Defendants for an Eighth Amendment violation must be dismissed as not plausible. *See Smith v. Perez*, No. 3:19-CV-1758 (VAB), 2020 WL 2307643, at *5 (D. Conn. May 8, 2020) (dismissing section 1983 claims against defendants where plaintiff failed to allege facts regarding the acts or omissions of defendants).

### 2.  The Fourteenth Amendment Claim

The Supreme Court has instructed that "where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of [Fourteenth Amendment] substantive due process, must be the guide for analyzing these claims." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998).

Mr. Hernaiz alleges violation of his rights under the Fourteenth Amendment. Mr. Hernaiz's Complaint, however, describes seizures of his person and property. The Fourth Amendment thus provides the explicit textual source for his claims concerning unlawful seizure, rather than the Fourteenth Amendment Due Process Clause. *See Tyus v. Newton*, 2016 WL 6090719, at *7 (D. Conn. 2016) ("To the extent that [Plaintiff] asserts a Fourteenth Amendment due process claim against [] defendants for depriving him of his liberty, that claim fails because it is predicated on his Fourth Amendment false arrest claim. As the United States Supreme Court has stated, if "a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process" must be the guide for analyzing these claims.'" (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994))).

Mr. Hernaiz also cannot bring a Fourteenth Amendment violation claim alleging that any of the Defendants failed to conduct a proper investigation on alleged conduct by Wagner and McKenna. *See Davis v. Rinaldi*, No. 3:19-cv-504 (CSH), 2019 WL 7879729, at *7 (D. Conn. Oct. 31, 2019) ("Plaintiff does not have a protected liberty interest in having correctional officials investigate his complaints, through the grievance process or otherwise."); *see also Davila v. Messier*, No. 3:13-cv-81 (SRU), 2014 WL 4638854, at *8 (D. Conn. Sept. 17, 2014) ("[The inmate] does not have a procedural due process interest in having his claim investigated in a manner he deems appropriate."); *Harris v. City of New York*, 2023 WL 6542019, at *2 (S.D.N.Y. 2023) ("[C]ourts have consistently declined to find that crime victims or those close to them possess a constitutional right to a police investigation into those crimes.") (collecting cases). Likewise, Mr. Hernaiz has no protected legal interest in the criminal prosecution of another individual. *See Brown v. Volpe*, No. 15 CIV. 9004 (PAE), 2017 WL 985895, at *4

(S.D.N.Y. Mar. 13, 2017), *Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").

Accordingly, in the absence of any allegations in support of a viable Fourteenth Amendment claim, the Court must dismiss Mr. Hernaiz's claims of Fourteenth Amendment violation as not plausible. *See* 28 U.S.C. § 1915A(a).

### 3.   The Fourth Amendment Claims

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; *see also Terry v. Ohio*, 392 U.S. 1, 9 (1968) ("[W]hat the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures." (internal quotation marks and citation omitted)). The touchstone of the Fourth Amendment is reasonableness. *See United States v. Knights*, 534 U.S. 112, 118 (2001); *Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 61–2 (1992) ("Whether the Amendment was in fact violated is . . . [a] question that requires determining if the seizure was reasonable.").

A Fourth Amendment "seizure" occurs when police detain an individual under circumstances in which a reasonable person would believe he or she is not at liberty to leave. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). "There are two relevant types of seizures, each of which requires a different level of justification: (i) an investigatory (or *Terry*)[9] stop ... and (ii) an arrest[.]" *Smith v. Vill. of Brockport*, 2022 WL 597465, at *11-12 (W.D.N.Y. Feb. 28, 2022) (citing *United States v. Glover*, 957 F.2d 1004, 1008 (2d Cir. 1992)). Arrests require probable cause, but a police officer may make an investigatory or *Terry* stop "as long as

---

[9] *See Terry v. Ohio*, 392 U.S. 1 (1968).

the officer has reasonable suspicion that the person to be detained is committing or has committed a criminal offense." *Grice v. McVeigh,* 873 F.3d 162, 167 (2d Cir. 2017).

Generally, a search or arrest made due to a warrant issued by a neutral magistrate is presumed reasonable because such warrants may issue only upon a showing of probable cause. *Walczyk v. Rio*, 496 F.3d 139, 155–56 (2d Cir. 2007); *Ganek v. Leibowitz*, 874 F.3d 73, 81 (2d Cir. 2017). Under both federal law and Connecticut law, probable cause to search is demonstrated where the totality of circumstances indicates a "fair probability that contraband or evidence of a crime will be found in a particular place." *Walczyk v. Rio,* 496 F.3d 139, 156 (2d Cir. 2007).[10]

### a.   The False Arrest/False Imprisonment/Malicious Prosecution Claim

Mr. Hernaiz appears to assert malicious prosecution and false arrest or false imprisonment claims under the Fourth Amendment against Sergeant Wagner and Detective McKenna. *See* Compl. at 24 (Count One), ECF No. 1-1.

To state a valid claim for malicious prosecution and false arrest or false imprisonment under section 1983, "a plaintiff must plead an unreasonable deprivation of liberty in violation of the Fourth Amendment and satisfy the state law elements of the underlying claims." *Mendes v. Cunningham*, No. 3:21-CV-1527 (JAM), 2022 WL 2104515, at *2 (D. Conn. June 10, 2022) (citations omitted). The elements of these claims are similar.

---

[10] Probable cause is a "fluid concept" that "turn[s] on the assessment of probabilities in particular factual contexts." *Illinois v. Gates*, 462 U.S. 213, 232–33 (1983). Whether probable cause exists must be evaluated by taking into account the totality of the circumstances. *See id.* at 234; *see also Jenkins v. City of New York*, 478 F.3d 76, 90 (2d Cir. 2007). The probable cause determination is objective; it should be made without regard to the officer's subjective motives or belief regarding the existence of probable cause. *Barnett v. City of Yonkers*, 2018 WL 4680026, at *7 (S.D.N.Y. Sept. 28, 2018). Probable cause may exist where an officer has mistaken information, so long as it was reasonable for the officer to rely on the information. *See Mistretta v. Prokesch*, 5 F. Supp. 2d 128, 133 (E.D.N.Y. 1998).

The elements of a malicious prosecution claim under Connecticut law are that: "(1) the defendant initiated or continued criminal proceedings against the plaintiff; (2) the criminal proceeding terminated in favor of the plaintiff; (3) 'the defendant acted without probable cause'; and (4) 'the defendant acted with malice.'" *Roberts v. Babkiewicz*, 582 F.3d 418, 420 (2d Cir. 2009) (quoting *McHale v. W.B.S. Corp.*, 187 Conn. 444, 447 (1982)); *see Lopes v. Farmer*, 944 A.2d 921, 924 (Conn. 2008) ("[O]ne of the elements of the tort of malicious prosecution is favorable termination of the underlying action[.]").

Under Connecticut law, false arrest and false imprisonment claims require pleading and proof of the same four elements. *Arpino v. Spera*, No. 3:22-CV-01114 (KAD), 2022 WL 21751856, at *4 (D. Conn. Sept. 22, 2022). "False imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another." *Chase v. Nodine's Smokehouse, Inc.*, 360 F. Supp. 3d 98, 112 (D. Conn. 2019). "The elements of such a claim under Connecticut law are: (1) the defendant arrested plaintiff or had plaintiff arrested; (2) the plaintiff was aware of the arrest; (3) there was no consent for the arrest; and (4) the arrest was not supported by probable cause." *Id.* "The applicable law" for false arrest and for false imprisonment "is identical." *Outlaw v. City of Meriden*, 43 Conn. App. 387, 392, 682 A.2d 1112, 1115 (1996).

In addition, claims of false imprisonment or false arrest under Connecticut law require a plaintiff to prove that there was a favorable termination of the proceedings against him. *See Miles v. City of Hartford*, 445 F. App'x 379, 383 (2d Cir. 2011) (noting "favorable termination is an element of 'a section 1983 claim sounding in false imprisonment or false arrest'" under Connecticut law (quoting *Roesch v. Otarola,* 980 F.2d 850, 853–54 (2d Cir. 1992)));[11] *see also*

---

[11] This Court follows Second Circuit precedent that Connecticut law requires a favorable termination of a prosecution for such claims. *See Harris v. Doe*, No. 3:24-cv-151 (MPS), 2024 WL 1344697, at *2 (D. Conn. Mar. 29, 2024); *see also Miles v. City of Hartford,* 719 F. Supp. 2d 207, 213 (D. Conn. 2010) (noting *Roesch* "remains

*Hernaiz v. Rivera*, No. 3:24-CV-94 (JAM), 2024 WL 2053466, at *2 (D. Conn. May 7, 2024) (dismissing false arrest claims against Hartford Officers Rivera and Mantilla because "Hernaiz has not alleged a valid claim for false arrest because he has not alleged that the charges for which he was arrested have been terminated in his favor"). A "favorable termination" means that a plaintiff must show that her "prosecution ended without a conviction." *Thompson v. Clark*, 142 S. Ct. 1332, 1335 (2022).

Defendants argue that Mr. Hernaiz has not alleged facts to satisfy the favorable termination requirement for his claims because his charges remain pending. Defs.' Mem. at 11, ECF No. 20-1. Because The Connecticut Judicial website indicates that Mr. Hernaiz's charges from his November 10, 2021 arrest remain pending, the Court will grant the motion to dismiss on this ground.

Accordingly, Mr. Hernaiz's section 1983 claims of malicious prosecution and false arrest or false imprisonment are dismissed as not plausible.

### b. The Clothing and Property Claim

"A 'seizure' of property . . . occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Soldal v. Cook Cty., Ill.,* 506 U.S. 109, 113 (1984) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). "To determine whether a seizure is unreasonable, a court must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interest alleged to justify the intrusion and determine whether the totality of the circumstances justified

good law that this Court must follow absent a ruling to the contrary from the Second Circuit or a Connecticut appellate court.").

the particular sort of seizure." *Carroll v. Cty. of Monroe*, 712 F.3d 649, 651 (2d Cir. 2013)

(internal quotation marks, citations, and alterations omitted).

Normally, a government official must obtain a warrant, issued by a judicial officer upon

probable cause, to search or seize a person's property. *See, e.g.*, *Coolidge v. New Hampshire*,

403 U.S. 443, 449 (1971). To successfully challenge a warrant, "the plaintiff must make a

'substantial preliminary showing' that the affiant knowingly and intentionally, or with reckless

disregard for the truth, made a false statement in his affidavit and that the allegedly false

statement was 'necessary to the finding of probable cause.'" *Golino v. City of New Haven*, 950

F.2d 864, 870 (2d Cir. 1991). Recklessness may be inferred where the omitted information was

clearly critical to the probable cause determination." *Rivera v. United States*, 928 F.2d 592, 604

(2d Cir. 1991) (internal quotation marks and citations omitted).[12]

Mr. Hernaiz claims that his car and clothing were illegally seized under a warrant falsely

obtained by Defendant Wagner. Compl. at ¶ 13.

Defendants argue that Mr. Hernaiz has failed to allege any facts to support an inference

that he sustained a Fourth Amendment violation. Defs.' Mem. at 10, ECF No. 20-1.

The Court agrees.

Other than alleging that the warrant is "bogus," Compl. at ¶¶ 13, 14, ECF No. 1-1, Mr.

---

[12] The Court notes several exceptions to the warrant requirement, including two that would be applicable here if a warrant was not procured prior to seizure of his property: (1) the automobile exception and (2) exigent circumstances. Pursuant to the automobile exception, "police may conduct a warrantless search of a readily mobile motor vehicle if probable cause exists to believe the vehicle contains contraband or other evidence of a crime." *United States v. Howard*, 489 F.3d 484, 492 (2d Cir. 2007). Indeed, one of the underlying rationales of the automobile exception is that "because a vehicle is readily movable, exigent circumstances might require a warrantless search." *Id.* (citing *Carroll v. United States*, 267 U.S. 132, 153 (1925)); *see also Cardwell v. Lewis*, 417 U.S. 583, 590 (1974) (highlighting the "exigent circumstances that exist in connection with movable vehicles" because "the opportunity to search is fleeting since a car is readily movable," which "is strikingly true when the automobile's owner is alerted to police intentions and, as a consequence, the motivation to remove evidence from official grasp is heightened" (citing *Chambers v. Maroney*, 399 U.S. 42, 51 (1970))).

Hernaiz fails to provide any factual allegations to suggest that the warrant was obtained intentionally or recklessly without regard for the truth based on false statements or material omissions necessary to a finding or probably cause. *See Owens v. City of Milford*, No. 3:24-CV-286 (VDO), 2024 WL 2918357, at *4 (D. Conn. June 10, 2024) (finding plausible Fourth Amendment claim where Plaintiff alleged police officers omitted "exculpatory video footage" that would have been material to a finding of probable cause); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Twombly*, 550 U.S. at 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations omitted)).

Accordingly, Plaintiff has not alleged a plausible Fourth Amendment violation arising from seizure of his property without probable cause, and this claim will be dismissed.

### 4. The Conspiracy Claim

Mr. Hernaiz asserts that there was a civil conspiracy between Wagner and McKenna and also between Boothroyd and McCay, all of whom work for the Meriden Police Department. *See* Compl. at 5 (Count One), 6 (Count Three), 8 (Return of Service), ECF No. 1-1.

Defendants argue that Plaintiff has not alleged a plausible claim of conspiracy to violate his civil rights under 42 U.S.C. § 1983. Defs.' Mem. at 20, ECF No. 20-1.

The Court agrees.

As a preliminary matter, the intracorporate conspiracy doctrine bars such claims of conspiracy to violate Mr. Hernaiz's civil rights because all of the individual defendants were

16

employees of the Meriden Police Department, and the allegations reflect that their conduct relevant to this action was within the scope of their employment. *See Guillen v. City of New York*, 625 F. Supp. 3d 139, 161 (S.D.N.Y. 2022) (finding that section 1983 conspiracy claims against law enforcement officers in same police department were barred).[13]

To the extent he alleges violation of his Fourth Amendment rights based on his detention by the Hartford Officers Rivera and Mantilla due to a conspiracy between the Hartford Police Officer and Defendants Wagner and McKenna, Mr. Hernaiz has not alleged facts to suggest a plausible conspiracy under 42 U.S.C. § 1983.

For a conspiracy claim under section 1983, Mr. Hernaiz "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2013) (internal quotation marks and citations omitted). "It is well settled that claims of conspiracy containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Brook v. Ruotolo*, No. 23-1339, 2024 WL 3912831, at *3 (2d Cir. Aug. 23, 2024) (citing *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011)). Thus, his Complaint must contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly,* 550 U.S. at 556.

Here, Mr. Hernaiz claims in conclusory terms that Sergeant Wagner and Detective McKenna were "conspiring with Hartford Police Officers Rivera and Mantilla" by instructing

---

[13] Under the doctrine of intracorporate conspiracy, "officers, agents and employees of a single corporate or municipal entity are legally incapable of conspiring together," thus, they cannot be liable for conspiracy. *Blue v. City of New York*, No. 16-CV-9990(VSB), 2018 WL 2561023, at *9 (S.D.N.Y. June 4, 2018) (citing *Hartline v. Gallo*, 546 F.3d 95, 99 (2d Cir. 2008) (affirming application of intracorporate conspiracy doctrine in conspiracy claim under 42 U.S.C. § 1985(3))). According to the personal stake exception, the intracorporate conspiracy doctrine does not apply to bar conspiracy claims against "individuals within a single entity when they are pursuing personal interests wholly separate and apart from the entity." *Bond v. Bd. of Educ. of the City of N.Y.,* No. 97–CV–1337, 1999 WL 151702, at *2 (E.D.N.Y. Mar. 17, 1999). Mr. Hernaiz has not alleged facts to suggest that the personal stake exception applies.

them "to illegally arrest" Mr. Hernaiz on November 9, 2021, at Hartford Hospital, and to "illegally detain [him and his] car and … clothes without a warrant." Compl. at ¶¶ 1, 6, 12, ECF No. 1-1.

But Mr. Hernaiz's allegations—that Defendants obtained a warrant for Mr. Hernaiz's arrest on November 10, 2021 (one day after Hartford Officers allegedly detained him on November 9, 2021, *id.* ¶¶ 13–14)—indicate that Defendants sought to arrest Mr. Hernaiz legally, contrary to his conclusory claim that Defendants McKenna and Wagner made an agreement with the Hartford Officers to violate his civil rights. *See* Compl. at 5 (Count one), ECF No. 1-1.

Mr. Hernaiz thus has not alleged sufficient facts to raise an inference that Defendants Wagner and McKenna had a meeting of the minds that they should violate Mr. Hernaiz constitutional rights. *See Gallop*, 642 F.3d at 368 ("courts have no obligation to entertain pure speculation and conjecture."); *Storck v. Suffolk Cnty. Dep't of Soc. Servs.*, 62 F. Supp. 2d 927, 940 (E.D.N.Y. 1999) ("[A]llegations [of conspiracy in section 1983 claims] can be neither vague nor conclusory, but must 'allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the alleged conspiracy.'" (internal citation omitted)); *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) ("[C]onclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are insufficient." (quoting *Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993))).

As a result, Mr. Hernaiz may not proceed on a civil conspiracy claim against Defendants. Nor can he seek damages from any Defendant named in this action for any Fourth Amendment violation that may have been committed by non-Defendants Rivera and Mantilla.

Accordingly, Mr. Hernaiz's conspiracy claim under 42 U.S.C. § 1983 will be dismissed.

### 5.   The First, Fifth, and Sixth Amendment Claims

Mr. Herniaz does not allege factual allegations to support any of his claims under the First, Fifth, or Sixth Amendments to the United States Constitution. *See Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (noting First Amendment retaliation claim requires factual showing that claimant engaged in protected speech or conduct and official took adverse action motivated by retaliation); *Ambrose v. City of New York*, 623 F. Supp. 2d 454, 466–67 (S.D.N.Y. 2009) (noting that Fifth Amendment applies to federal government, not to state officials); *Bourdon v. Loughren*, 386 F.3d 88, 90 (2d Cir. 2004) (noting that section 1983 action not appropriate vehicle to bring Sixth Amendment ineffective assistance of counsel claim).

Accordingly, Mr. Hernaiz's claims under the First, Fifth and Sixth Amendments are dismissed as not plausible. *See* 28 U.S.C. § 1915A(a).

### 6.   Supervisory Liability

Mr. Hernaiz seeks to impose liability on Chief Rosado and Deputy Chief Scully for failing to provide adequate supervision and training for their subordinates, and on Defendants Boothroyd and McKay for failing to supervise their subordinates. Compl. at 5-6 (Counts Two and Four), ECF No. 1-1. But "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676. And "supervisors are not automatically liable for constitutional violations committed by lower-level employees." *Hernaiz*, No. 3:24-CV-94 (JAM), 2024 WL 2053466, at *3.

The Second Circuit explained that "there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983

F.3d 618 (quoting *Iqbal*, 556 U.S. at 676). "The violation must be established against the supervisory official directly." *Id.*

Here, Mr. Hernaiz does not plead facts suggesting that any of the supervisory defendants were even aware of a need for more or better supervision of their subordinates at the time of the incident. Mr. Hernaiz appears to assume that, because of their supervisory roles, Rosado, Scully, Boothroyd, and McKay are liable for any unconstitutional conduct by their subordinates. He has not alleged any specific facts showing that these Defendants participated in any unconstitutional conduct or created a policy which permitted unconstitutional conduct. Absent alleged facts to reflect that these supervisory Defendants had personal involvement in a constitutional violation, Mr. Hernaiz has not alleged plausible claims against Chief Rosado, Deputy Chief Scully or Internal Affairs staff Boothroyd and McKay for their failure to train or supervise under 42 U.S.C. § 1983. *Hernaiz*, No. 3:24-CV-94 (JAM), 2024 WL 2053466, at *3 (dismissing similar supervisory liability claim made by Mr. Hernaiz).

Accordingly, any claims against Chief Rosado, Deputy Chief Scully or Internal Affairs staff Boothroyd and McKay for their failure to train or supervise under 42 U.S.C. § 1983 will be dismissed.

### 7.  The Official Capacity Claims

 A municipality cannot be held liable in a section 1983 action based on *respondeat superior*. i.e., merely because it employs a tortfeasor. *Monell v. Department of Social Servs.*, 436 U.S. 658, 691 (1978). Municipalities are responsible only for "their own illegal acts." *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986).

To state a cognizable claim for municipal liability, a plaintiff must demonstrate the existence of "(1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3)

20

the deprivation of a constitutional right." *Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020); *see also Monell*, 436 U.S. at 694. The plaintiff must show that his rights were violated as the result of a municipal policy, a municipal custom or practice, or the decision of a municipal policymaker with final policymaking authority. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988).

To the extent Mr. Hernaiz asserts any claims against Defendants in their official capacities, such claims are treated as if the claims are asserted against the municipality itself. *See Brandon v. Holt*, 469 U.S. 464, 471-72 (1985) (noting that suit against municipal official in his official capacity is suit against municipality because liability for any judgment would rest with the municipality).

But, as the Court has determined that he has failed to allege any plausible constitutional violation, Mr. Hernaiz may not proceed on any plausible official capacity claims.

Accordingly, any such official capacity claims against any of the Defendants will be dismissed.

### 8. The State Law Claims

This Court can exercise supplemental jurisdiction over a state law claim if: (1) there is a claim arising under the federal constitution or federal laws; (2) the relationship between the federal claim and the state claim permits the conclusion that the entire action comprises but one constitutional case; (3) the federal claim has substance sufficient to confer subject matter jurisdiction on the court; and (4) the state and federal claims derive from a common nucleus of operative fact. *Miller v. Lovett*, 879 F.2d 1066, 1071 (2d Cir. 1989), *abrogated on other grounds by Graham v. Connor*, 490 U.S. 386 (1989); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

The Court has dismissed all federal law claims in this case.

Accordingly, the Court declines to exercise supplemental jurisdiction over any state law claims, and will dismiss them without prejudice to refiling them in state court. *See* 28 U.S.C. § 1367(c)(3) (providing that the court may decline to exercise supplemental jurisdiction over a state law claim if the court has dismissed all claims over which it has original jurisdiction).

## IV.    CONCLUSION

For the foregoing reasons, the Complaint is **DISMISSED**, and Defendants' motion to dismiss (ECF No. 20) is **GRANTED** as to Mr. Hernaiz's federal claims.

The Court declines to exercise supplemental jurisdiction over Mr. Hernaiz's state law claims. *See* 28 U.S.C. § 1367(c)(3).

To the extent deficiencies identified in this Ruling and Order can be remedied, Mr. Hernaiz may file an Amended Complaint by **November 15, 2024**.

Any Amended Complaint, if filed, will completely replace the Complaint, and the Court will not consider any allegations made in the original Complaint in evaluating any Amended Complaint. If Mr. Hernaiz does not file an Amended Complaint by **November 15, 2024**, the Court will close this case and remand his state law claims to the Connecticut Superior Court for the Judicial District of Meriden.


**SO ORDERED** at New Haven, Connecticut, this 11th day of October, 2024.

/s/ Victor A. Bolden_____
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE